# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**662**
**CA 13-02037**
PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, SCONIERS, AND DEJOSEPH, JJ.

---

ALEXANDRA VILLAFRANK, PLAINTIFF-APPELLANT,

V                                                          MEMORANDUM AND ORDER

DAVID N. ROSS, INC., DAVID ROSS, INDIVIDUALLY,
AND HOWARD ROSS, INDIVIDUALLY,
DEFENDANTS-RESPONDENTS.

---

SPANN & SPANN, P.C., DUNKIRK, JAMES P. RENDA, BUFFALO, FOR
PLAINTIFF-APPELLANT.

FESSENDEN, LAUMER & DEANGELO, JAMESTOWN (MARY B. SCHILLER OF COUNSEL),
FOR DEFENDANTS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Chautauqua County (James H. Dillon, J.), entered February 7, 2013. The order granted the motion of defendants David N. Ross, Inc. and Howard Ross for summary judgment.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is denied, and the complaint is reinstated against defendants David N. Ross, Inc. and Howard Ross.

Memorandum: Plaintiff commenced this action seeking injunctive relief and monetary damages based upon damage to her property allegedly caused by defendants' diversion of additional surface water onto her property. We agree with plaintiff that Supreme Court erred in granting the motion of defendants David N. Ross, Inc. (the Ross corporation) and Howard Ross (defendant) for summary judgment dismissing the complaint against them. We therefore reverse the order, deny the motion, and reinstate the complaint against those two parties (collectively, defendants).

Plaintiff and the Ross corporation own neighboring properties in the Town of Westfield, with plaintiff's property located to the west of the Ross property. Because of the topography of the area, surface water on the two properties naturally flows in a northwesterly direction. There is a central drainage ditch between the two properties that flows from the south to the north (hereafter, north-south ditch). The north-south ditch begins on the Ross property, runs along the boundary between the properties, and then extends north onto plaintiff's property. In the 1960s, defendant's father and plaintiff's father-in-law agreed to install an underground clay pipe running from east to west, starting from a catch basin on the Ross property and ending at a creek located on plaintiff's

property.  The catch basin is located at the southern end of the north-south ditch, and its purpose is to act as a "clean-out in case the lines get plugged."  There is also a 700- to 800-foot lateral drainage ditch running from east to west across the Ross property (hereafter, east-west ditch), which empties into the catch basin.  Plaintiff alleges that defendants have made various modifications to the original drainage system over time, and that such modifications have diverted additional water from the Ross property onto her property.

A plaintiff "seeking to recover [from an abutting property owner for the flow of surface water] must establish that . . . improvements on the defendant's land caused the surface water to be diverted, that damages resulted and either that artificial means were used to effect the diversion or that the improvements were not made in a good faith effort to enhance the usefulness of the defendant's property" (*Cottrell v Hermon*, 170 AD2d 910, 911, *lv denied* 78 NY2d 853; *see Prachel v Town of Webster*, 96 AD3d 1365, 1366; *Moone v Walsh*, 72 AD3d 764, 764).  Here, defendants failed to meet their burden on their motion of establishing their entitlement to judgment as a matter of law inasmuch as their own moving papers raise an issue of fact whether they diverted surface water onto plaintiff's property by artificial means (*see Vanderstow v Acker*, 55 AD3d 1374, 1375; *cf. Congregation B'nai Jehuda v Hiyee Realty Corp.*, 35 AD3d 311, 312; *see generally Zuckerman v City of New York*, 49 NY2d 557, 562).  Defendant admitted that, in the summer of 2010, he "upgraded" a clay pipe located within the east-west ditch by removing it and installing 800 feet of perforated plastic pipe.  Although that pipe is located entirely on the Ross property, it carries water into the north-south ditch, which ultimately terminates on plaintiff's property.  Defendants also acknowledged that they had installed about 1,000 feet north of the catch basin a pipe that drains water from the Ross property and empties it directly into the north-south ditch.  We agree with plaintiff and the court that whether defendants' actions constituted mere "routine maintenance and repair of existing . . . pipes", as defendants contend, raises an issue of fact.  Moreover, defendants further acknowledged that there is periodic pooling of water around the catch basin.  While defendants emphasize that such pooling occurred entirely on their property, the catch basin is located less than seven feet from the property line and, further, it is undisputed that the accumulated water ends up in the north-south ditch, where it ultimately flows onto plaintiff's property.

Even assuming, arguendo, that defendants met their initial burden on the motion, we conclude that plaintiff raised an issue of fact in opposition (*see Prachel*, 96 AD3d at 1366; *Moone*, 72 AD3d at 765; *cf. Tatzel v Kaplan*, 292 AD2d 440, 441).  Plaintiff submitted, inter alia, affidavits of her husband in which he averred that defendants replaced the clay pipe in the east-west ditch in 2010 and "re-routed" that pipe to the north-south ditch, thus diverting additional water onto plaintiff's property.  In his 2012 affidavit, plaintiff's husband further averred that defendants "are continuing this diversion process . . . as I have observed more ditching that is being placed with backhoes."  A survey prepared in 2011 corroborates plaintiff's assertion that water flowing east to west across the Ross property ends up in the north-south ditch as opposed to flowing west through the clay pipe into the creek as originally agreed by the

parties and/or their predecessors. Further, plaintiff submitted an affidavit from an engineering expert who averred that, at some point between 2009 and 2012, defendants dug a new ditch connecting the east-west ditch to the north-south ditch and that, as a result, storm water that previously had flowed into the catch basin and through the underground clay pipe to the creek "is now redirected to the north and ultimately reaches [plaintiff's] property." In addition to the new plastic pipe in the east-west ditch that defendant admittedly installed, the expert observed "numerous perforated plastic pipe[s] under drains . . . on the Ross property to collect subsurface water," which "appear[ed] to be relatively new." The expert opined, within a reasonable degree of engineering certainty, that the "flow rate" and volume of water entering plaintiff's property from the north-south ditch is "more than twice . . . what previously existed," and that "the majority of this increased flow is directly due to the modifications [that defendants] made after 2009" (*see Prachel*, 96 AD3d at 1366).

We further agree with plaintiff that there is an issue of fact whether the drainage system modifications on defendants' property were a proximate cause of the alleged damage to her property (*see id.; Vanderstow*, 55 AD3d at 1375-1376). Defendants emphasize plaintiff's claimed inability to develop a subdivision on the property, asserting that such inability is the result of a variety of factors unrelated to any conduct on their part. Plaintiff, however, may recover damages for any diminution in the value of her property or the cost of remediation irrespective of the proposed subdivision (*see generally Jenkins v Etlinger*, 55 NY2d 35, 39).

Finally, we agree with plaintiff that there is an issue of fact with respect to the individual liability of defendant. It is well established that "[a] corporate officer may be held personally liable for a tort of the corporation if he or she committed or participated in its commission, whether or not his or her acts are also by or for the corporation" (*Apollo H.V.A.C. Corp. v Halpern Constr., Inc.*, 55 AD3d 855, 857; *see Gjuraj v Uplift El. Corp.*, 110 AD3d 540, 541; *see also Kopec v Hempstead Gardens*, 264 AD2d 714, 716). Here, plaintiff alleged, and defendant admitted, that he personally cleaned out the east-west ditch in 2005 and replaced the east-west pipe in 2010. Defendant further admitted that, north of the catch basin, he replaced another pipe that flows into the north-south ditch. We thus conclude that there is an issue of fact whether defendant is individually liable for his allegedly tortious conduct (*see Huggins v Parkset Plumbing Supply, Inc.*, 7 AD3d 672, 673; *cf. Kopec*, 264 AD2d at 716; *Clark v Pine Hill Homes*, 112 AD2d 755, 755).

Entered: August 8, 2014
Frances E. Cafarell
Clerk of the Court